UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN CIFERNI,

        *Plaintiff*,

    v.

NATIONAL RAILROAD PASSENGER
CORPORATION,

        *Defendant*.

Civil Action No. 1:18-cv-02202 (CJN)

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on Defendant's Motion for Summary Judgment, ECF No. 29.  For the reasons explained below, the Court will **GRANT** the Motion.

**Background**

Plaintiff John Ciferni was, at all relevant times, employed by the National Railroad Passenger Corporation ("Amtrak") as a building and bridges inspector.  Ciferni Depo. at 65:21.  Amtrak concluded that Ciferni had violated its workplace violence policy and suspended him for 10 days.  *Id.* at 100:13.  About fifteen minutes after Ciferni arrived at work on his first day back, three Amtrak police officers entered his work trailer.  *Id.* at 111:16.  Ciferni testified in his deposition that the officers "barreled in" unannounced and had their hands on their guns.  *Id.* at 118:18.  He also testified that he feared for his life and was shaking.  *Id.* at 119–20.  He acknowledged, however, that the police never directly threatened him, nor did they make physical contact with him, let alone cause him physical harm.  *Id.* at 124:13–17, 132:9–21.

After about twenty minutes of conversation with the officers in which Ciferni identified himself, explained it was his first day back from suspension, and called his supervisor who

confirmed that Ciferni was authorized to be in the trailer, the officers apologized for the misunderstanding and left.  *Id.* at 120–23.  Ciferni drove himself to the hospital after this interaction.  *Id.* at 121:13–15.  Ciferni asserts the interaction resulted in his having a racing heart, vertigo, stress, enhanced anxiety and stomach pains.  Pl.'s SMF ¶¶ 13, 21.[1]

Ciferni alleges that Amtrak violated the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, by negligently overseeing another employee, David McGrory, who allegedly had a history of animosity towards Ciferni.  *See generally* Compl., ECF No. 1.  Ciferni claims that McGrory used his position at Amtrak to have the officers raid Ciferni's office.  *Id.*

In the discovery phase of this litigation, Ciferni's counsel stonewalled Amtrak's discovery requests, did not produce any medical records, did not depose any witnesses, did not designate any expert witnesses, and were more or less absent from the discovery process.  *See* Order on Mot. to Dismiss, ECF No. 26.  Amtrak filed a motion to dismiss for discovery violations and nonprosecution.  *See* Def.'s Mot. to Dismiss, ECF No. 17.  But because "our [judicial] system favors the disposition of cases on the merits," the Court ordered an  extension of the discovery deadlines to allow Amtrak (but not Ciferni) to seek additional discovery.  Order on Mot. to Dismiss at 2 (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186–87 (D.C. Cir. 1985)).

Amtrak has now filed the pending Motion for Summary Judgment, ECF No. 29.  Amtrak argues that Ciferni cannot demonstrate all of the elements of his FELA claim, including breach of a duty, foreseeability, and causation.  And, generally, Amtrak argues that Ciferni's evidence is too speculative to survive a motion for summary judgment or was produced too late.

---

[1] In disputing Amtrak's statement of material facts, Ciferni cited portions of his own deposition that were not included in Amtrak's Exhibit 1 and were not otherwise produced for the Court's consideration.  Amtrak did not dispute these citations to Ciferni's Deposition in its Reply, so the Court will assume Ciferni's deposition makes the assertions that Ciferni claims it does.

In opposition to Amtrak's motion for summary judgment, Ciferni produced, for the first time, his medical records. *See* Pl.'s Ex. A, ECF No. 31-1. *But see* Order of October 7, 2020 (extending discovery for Amtrak only due to plaintiff's nonparticipation in discovery).

## Legal Standards

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support its position on a summary judgment motion, a party must cite to particular materials in the record, or must show that the materials cited by the other party "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." Fed. R. Civ. P. 56(c). If the moving party has met its burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Though the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" its position, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, "there must be evidence on which the jury could *reasonably* find for" the non-moving party. *Id.* at 248 (emphasis added).

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). Yet "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When a party fails to provide information required by Federal Rule of Civil Procedure 26(a) or (e), the party is "not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless[.]" Fed. R. Civ. P. 37(c)(1); *see also* Local Civil Rule 26.2 (prohibiting use of information withheld in discovery unless the withholding was substantially justified or harmless).

### Analysis

The Complaint could fairly be read to support various theories of liability.  Amtrak addresses several in its motion, including that Amtrak's police officers were negligent and that Amtrak's management was negligent in how it handled the hostile relationship between Ciferni and McGrory.  In his opposition to the motion for summary judgment, however, Ciferni focuses exclusively on the latter theory:  Amtrak's management of the hostile relationship between the two employees.  Unless otherwise noted, this opinion focuses on that theory of liability.

### I.     Ciferni Was Neither Physically Impacted Nor Within the "Zone of Danger."

The FELA provides, in relevant part:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier[.]

45 U.S.C. § 51.  It is well established that "[t]he basis of [a railroad employer's] liability is . . . negligence, not the fact that an injury occurs." *Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947).  A FELA plaintiff must therefore prove that the railroad was negligent and that its negligence caused plaintiff's injury, at least in part.  *See CSX Transp. Inc. v. McBride*, 564 U.S. 685 (2011).  A FELA negligence claim thus requires the common law elements of duty, breach, foreseeability, and causation.  *Urie v. Thompson*, 337 U.S. 163, 182 (1949).

The Supreme Court has explained that FELA is "primarily focused on physical injury" and is principally "intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 555 (1994). But the Supreme Court has also recognized FELA liability for negligently inflicted emotional injuries when they are closely tied to direct physical impacts or such impacts that were fortuitously avoided. *Id.* at 547, 556. Recovery for emotional injuries in those circumstances is limited to those plaintiffs who can meet the "zone of danger" test. *Id.* at 547–48. To be within the "zone of danger," a plaintiff must either directly "sustain a physical impact as a result of a defendant's negligent conduct, or [be] placed in immediate risk of physical harm by that conduct." *Id.*.[2] This test maintains "FELA's central focus on physical perils" but marginally expands its coverage to include near misses and similar close calls. *Gottshall*, 512 U.S. at 555–56. [3]

---

[2] The "zone of danger" test is an interpretation of the FELA, but the same test applies to seamen through the Jones Act and has been incorporated into general maritime law. *See Sawyer Bros., Inc., v. Island Transporter, LLC*, 887 F.3d 23, 38 (1st Cir. 2018). It is also akin to that of several jurisdictions that apply their own common law version of the test. *Gottshall*, 512 U.S. at 547; *Urie*, 337 U.S. at 174.

[3] There appear to be three types of situations that tend to meet the applicable zone of danger test even without direct physical harm to the plaintiff. *See In re Deepwater Horizon*, 841 F. App'x 675, 679 (5th Cir. 2021) (per curiam) (collecting cases). First, a plaintiff may have been in very close proximity to others who were physically injured by the negligent activity. *See, e.g., Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1410 (9th Cir. 1994) (holding that the plaintiff was in the zone of danger because she was in the same raft that overturned, which led to the serious injury and deaths of others). Second, a plaintiff may have been trapped in a highly dangerous area for an extended time. *See Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (finding no clear error in conclusion that plaintiffs were within zone of danger because they were in their vehicle aboard a small ferry amidst large waves when their vehicle tipped against the bulwark); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1338 (11th Cir. 2012) (per curiam) (holding plaintiffs sufficiently alleged being in zone of danger when plaintiffs were "trapped in [a] bus during [a] shooting near [the beach]" where their daughter was shot to death). And third, a plaintiff may have experienced a near-miss collision or gunshot. *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1034–35 (9th Cir. 2010) (holding the same when the plaintiff alleged a cargo ship nearly collided with the boat he was on and did collide with another vessel). The facts here

Ciferni does not contend that the police officers physically harmed him or even touched him aggressively. Pl.'s SMF ¶ 14; Ciferni Opp. at 10, ECF No. 31 ("[P]laintiff was not physically assaulted by the police officers[.]"); Ciferni Depo. at 132:9–21 ("Q: . . . [Amtrak police] raided but [did] not physically assault, correct? . . . A: No, they didn't physically harm me . . . They made me stand up and, you know- I don't know if they patted me down or anything. They may have patted me down. They didn't hurt me."). Ciferni correctly notes that the "[p]ain in his stomach, a racing heart, anxiety, and vertigo are all physical manifestations of harm" which can be actionable. Pl.'s SMF ¶ 20; *see also id.* ¶¶ 13, 21; Ciferni Depo. at 133 ("They put harm to my heart and my stress level, which is physical and it's very mental, but I consider that physical when your chest hurts[.]"). But on the record here, those were physical manifestations of emotional harms, not physical harms themselves. *See Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39–41 (1st Cir. 2018) (explaining the relationship between emotional stress and physical manifestations thereof). Ciferni's claim must therefore pass the zone of danger test.

As noted, a plaintiff falls within the zone of danger when "placed in immediate risk of physical harm" through allegedly negligent conduct. *Gottshall*, 512 U.S. at 548. Ciferni asserts he was in the zone of danger when the police officers "intimidated and handled [him] in a threatening manner." Pl.'s Opp. at 10. While Ciferni's opposition brief does not point to evidence in support of this argument, his statement of material facts does rely on portions of his own deposition in which he stated that the police officers did not knock or announce themselves but "barreled in [his] place telling [him he's] not supposed to be on the property." Ciferni Depo. at

---

do not neatly align with any of the categories—there was no injury to any nearby party, Ciferni was not trapped in a correspondingly dangerous situation, and there was no "near miss."

113; *see also id.* at 118 (They "flung the door open, you know, and three guys barreled through the freaking door . . . They had their hands on their weapons.").

Amtrak argues that a reasonable juror could not find that Ciferni was subject to a reasonable fear of imminent physical harm.  Amtrak notes that Ciferni himself testified that the officers never drew their weapons, *id.* at 119, and were uniformed and recognizable as Amtrak police, *id.*  In particular, during his deposition, Ciferni testified:

> Q: Did they [the police] ever threaten you?
> A: No.
> Q: Did they ever make physical contact with you?
> A: No. They came close to me, but they were gentlemen in the end.

*Id.* at 124:13–18.  The police entered through an unlocked door, asked him questions, and then left.  *Id.* at 117, 124.

The Court agrees with Amtrak that summary judgment is appropriate.  Viewing the evidence in the light most favorable to Ciferni, he cannot show that any feared physical harm was sufficiently imminent to satisfy the zone of danger test.  The police never threatened Ciferni, never drew their weapons, and never fired at him.  While the precise line between a reasonable and unreasonable fear of imminent physical harm is not clear, this case is not close.  Even if the risk of physical harm were immediate in time, the likelihood of harm was far too remote.

The cases that the Supreme Court cited in *Gottshall* as examples of the zone of danger test involved much more immediate threats.  *See* 512 U.S. at 538, n.9 (collecting cases).  If they did not include direct physical harmful impacts, they involved near misses of actual explosions or vehicle collisions.  *See, e.g.*, *Mack v. South-Bound R. Co.*, 532 S.C. 323 (1898) (a boy was forced to lie flat on the tracks underneath a speeding train).  To meet the zone of danger test "[t]he threat of injury . . . must have been more than minimal or negligible." *Jones v. Howard University*, 589 A.2d 419, 423 (D.C. 1991); *see also In re Deepwater Horizon*, 841 F. App'x 675, 679 (5th Cir.

2021) (per curiam) (concluding plaintiffs failed to allege being within the zone of danger despite being surrounded by various explosions and suffering facial burns due to overwhelming heat); *supra* at n.3.  There is nothing in the record to show that Ciferni was at greater risk than any ordinary police interaction.  Simply talking to the police as they investigate does not place one in a sufficiently serious and immediate risk of physical harm.[4]

## II.   On the Record Here, Ciferni Could Not Establish That Amtrak Was Negligent.

Even assuming that Ciferni could demonstrate a compensable injury, Amtrak is correct that summary judgment is appropriate for a second reason:  on the record here, Ciferni could not prove that Amtrak was negligent.

Ciferni contends that Amtrak breached its duty to use reasonable care to provide a safe work environment.  Def.'s Mot. at 5, ECF No. 29-2 (citing *Ellis*, 329 U.S. at 653).  Amtrak does not contest it has this duty.  Nor could it.  *Consol. Rail*, 512 U.S. at 547 (holding that "as part of its duty to use reasonable care in furnishing its employees with a safe place to work, a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury" (citation and quotation marks omitted)).

But Amtrak does argue that this duty does not extend to cases involving an apparent allegation of police misconduct.  Amtrak asserts that:

> In cases involving allegations of police misconduct, including "excessive use of force, the applicable standard of care is that of a reasonably prudent police officer." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 29 (D.D.C. 2011) (citing *Smith v. District of Columbia*, 882 A.2d 778, 788 (D.C. 2005)).  "Expert testimony to establish the applicable standard of care is required in such cases because '[t]he applicable standard of care in cases of this kind is beyond the ken of the average

---

[4] Ciferni's other arguments on this point were red herrings or nonresponsive to Amtrak's points. *See* Pl.'s Opp. at 8–10.  Amtrak did not argue Ciferni was a mere bystander nor that liability was limited to crashes.  *See* Def.'s Mot. at 6–8.

lay juror.'" *Id.* (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 917 (D.C. 1993).

Def.'s Mot. at 6 (quoting *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 258 (D.D.C. 2018)).  But Ciferni has never identified an expert who could provide testimony regarding that standard of care.

In his opposition brief, however, Ciferni appears to rely exclusively on the theory that Amtrak breached its duty in how it handled his co-employee McGrory, not in how the three police officers conducted themselves in Ciferni's workspace.  To be sure, Ciferni argues that a standard of care for police officer conduct is unnecessary here because "Amtrak has a clear, written policy that provides the standards of conduct required of its employees."  Pl.'s Opp. at 7–8.  But Ciferni cited no such standards of conduct that he asserts were violated.  *See generally* Pl.'s Opp.  All in all, therefore, Ciferni is limited to his claim that Amtrak had a general duty to provide a safe work environment and failed to do so—not a breach of its duty regarding its officers' conduct, and not an alleged breach of its internal policies.

But even as to Amtrak's duty to provide a safe work environment, Amtrak argues that Ciferni's evidence regarding causation is too speculative to survive summary judgment.  In particular, Amtrak contends that while Ciferni testified that the police officers "put harm to my heart and my stress level, which is very physical and very mental," *see* Ciferni Depo. at 133:11–12, he produced no medical records and did not provide any documentation of any injury until filing his opposition to summary judgment.  The Court agrees.  Ciferni proffered this information well after initial disclosures were due, after the end of discovery, and in contravention of the Court's Order of October 7, 2020.  Pursuant to Federal Rule of Civil Procedure 37(c)(1), and

consistent with the orders applicable to this case, Ciferni cannot rely on those records.  And as a result, Ciferni cannot prove that the police interaction caused him any damages.[5]

## III.   The Limited Evidence of McGrory's Participation Is Not an Additional Basis for Summary Judgment.

A brief note on one of Amtrak's primary arguments.  As discussed above, Ciferni claims that his co-employee, McGrory, called the police.  Amtrak argues that this claim is pure speculation that is neither based on admissible evidence at trial nor permissible to consider in ruling on a motion for summary judgment.  In particular, Ciferni testified in his deposition that one of the police officers had said that McCrory had called the police and claimed that Ciferni was an intruder.  *See* Pl.'s SMF ¶ 17; Ciferni Depo. at 113:20–22.  Amtrak argues this testimony is inadmissible; Ciferni responds that that he would be able to call McGrory or the officer to testify at trial.

The Court sides with Ciferni on this point.  Amtrak largely states the law correctly:  Ciferni may not "rely solely on allegations or conclusory statements" to defeat a motion for summary judgment, and while he, as the non-movant, must be given the benefit of every reasonable inference from the evidence, that does not include inferences based on guesses or speculation.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting . . . conclusory allegations as true . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.").  And "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

---

[5] Amtrak also argues that Ciferni's inability to prove the foreseeability of his injuries is another reason to grant summary judgment.  But that argument appears to be directed towards a theory of liability—the police's negligent use of force—that Ciferni abandoned.

But here there is not quite a "complete failure" of proof:  there is a lengthy history of animosity between the two employees and Ciferni did testify that one of the officers told him that McGrory called the police.  Ciferni Depo. at 113 ("And let me guess who called the cops.  The young cop blurted out Dave McGrory.  I said yeah, I figured it was him.").  To be sure, Ciferni's assertion itself appears to be hearsay and likely inadmissible.  But "a nonmovant is not required to produce evidence in a *form* that would be admissible at trial," so long as "the evidence [is] capable of being converted into admissible evidence."  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (emphasis original). [6]  Ciferni could call either the officer or McGrory to testify at trial, thereby avoiding any hearsay problem.

Amtrak did not produce evidence one way or the other on this issue—apparently choosing not to depose McGrory nor the police officers in question, or at least not pointing the Court to their depositions.  On this issue, penny-wise may be pound-foolish.  While it is a close call and the Court is not generally inclined to accept weak assertions by a party that failed to participate in discovery, *see Greene*, 164 F.3d at 675 (discouraging the acceptance of unsubstantiated self-serving claims), there does appear to be a dispute regarding whether McGrory called the police—and the possibility that Ciferni could produce someone at trial who would testify to that effect.  On this question, at least, Amtrak did not meet its burden to show that a reasonable jury could not conclude McGrory called the police on Ciferni.

---

[6] As Justice White put it:

> A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case. It is the defendant's task to negate, if he can, the claimed basis for the suit.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring).

## Conclusion

For the foregoing reasons, the Court concludes that Amtrak has shown that Ciferni cannot prove certain elements of his claim.   Therefore, the Court **GRANTS** Amtrak's Motion for Summary Judgment.  An Order will issue contemporaneously with this opinion.


DATE:  April 14, 2022

CARL J. NICHOLS
United States District Judge